CR 24-7 JMB/DLM

## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

     **INDICTMENT**

    Plaintiff,

     26 U.S.C. § 7201

v.     26 U.S.C. § 7206(2)

     18 U.S.C. § 1001

DAVID V. ERICKSON,

    Defendant.

### THE UNITED STATES GRAND JURY CHARGES THAT:

## INTRODUCTION

At times relevant to this Indictment:

1. The Defendant, DAVID V. ERICKSON, was a United States citizen residing in Excelsior, Minnesota.

2. ERICKSON was a consultant and technology entrepreneur with an active Certified Public Accountant ("CPA") license through the North Dakota Board of Accountancy.

### Tax Terms, Forms, and Schedules

3. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States, including the ascertainment, computation, and assessment of federal taxes.

4. Every citizen and resident of the United States ("taxpayers") who received income in excess of the minimum filing amount established by law for a



particular tax year was required to make and file annually an income tax return, wherein the taxpayer reported certain required items including all income, regardless of how and where it was earned, and any tax due and owing.

5.    For the purposes of federal taxation, income generally included, among other things, compensation for services performed by a taxpayer such as consulting fees, commissions, and similar items; dividends; investment proceeds; and other income generated by a taxpayer's trade or business.

6.    Form 1040, U.S. Individual Income Tax Return ("Form 1040") was an IRS form that taxpayers used to file their individual income tax return.

7.    Form 1040-X, Amended U.S. Individual Income Tax Return ("Form 1040-X") was an IRS form taxpayers used to amend a previously filed individual income tax return.

8.    Schedule E (Form 1040), Supplemental Income and Loss ("Schedule E") was an IRS form that was attached to a Form 1040 or 1040-X, when applicable, that taxpayers used to report income or losses generated from certain businesses, including S corporations.

9.    An S corporation was a corporation that elected to be taxed as a "pass-through" business entity, meaning that the S corporation passed its income, losses, deductions, and credits through to their shareholders for federal tax purposes. Shareholders were required to report their share of the S corporation's income and losses on Schedule E of their individual income tax returns and pay the taxes due on that income.

2

10.     Form 1120-S, U.S. Income Tax Return for an S Corporation ("Form 1120-S") was an IRS form used by businesses that elected to be treated as an S corporation for federal tax purposes and reported information such as income, deductions, and dividends paid to shareholders.

11.     Schedule K-1 (Form 1120-S), Shareholder's Share of Income, Deductions, Credits, etc. ("Schedule K-1") was an IRS form used to report a shareholder's share of an S corporation's income, deductions, dividends, and other items. An S corporation was required to annually issue Schedule K-1s to both the IRS and its shareholders.

**Erickson's U.S. and Foreign Companies and Sources of Income**

12.     Halstead Bay Holdings, Inc. ("HBH") was a corporation formed in Nevada on or about September 28, 2000. HBH provided consulting services in the District of Minnesota and elsewhere regarding, among other topics, virtual forms of payment used by merchants that transacted business over the internet.

13.     ERICKSON was the sole owner and operator of HBH, which he elected to treat as an S corporation for federal income taxation purposes. As the sole owner of HBH, ERICKSON was required to file an individual income tax return and report all of HBH's annual income or losses on his individual income tax return and pay any taxes due.

14.     On or about December 10, 2010, ERICKSON opened a bank account ending in 3196 in the name of HBH at a U.S. financial institution ("HBH's U.S. Bank Account"). ERICKSON was the only authorized signer on HBH's U.S. Bank

3

Account. From on or about January 1, 2014 through December 31, 2018,
ERICKSON directed and caused transactions to be completed in which millions of
dollars were deposited into HBH's U.S. Bank Account.

15.    Through his exclusive ownership of HBH, ERICKSON owned, in whole
or in part, and exercised control over several companies located around the world,
including Bannister Corporation, N.V. ("Bannister"); Firefly Lane Corporation, N.V.
("Firefly Lane Corporation"); Firefly Lane Ltd.; Granity Entertainment Ltd.
("Granity"); Ijshuis, B.V. ("Ijshuis"); Rypl.com, Inc. ("Rypl"); and Surecom
Corporation, N.V. ("Surecom") (collectively, "ERICKSON's Foreign Companies").

16.    Ijshuis was a corporation formed in the Netherlands on or about April
20, 2007. HBH was the sole owner of Ijshuis.

17.    Bannister was a corporation formed in Curaçao on or about December
11, 2000. Ijshuis was the sole owner of Bannister.

18.    Britneyville Corporation, N.V. ("Britneyville") was a corporation
formed in Curaçao on or about October 14, 1999. Britneyville changed its name to
Firefly Lane Corporation on or about August 11, 2017. Bannister owned a
substantial interest in Britneyville and Firefly Lane Corporation.

19.    Firefly Lane Ltd. was a company formed in Anguilla on or about
December 27, 2001. Bannister owned a substantial interest in Firefly Lane Ltd.

20.    Rypl was a corporation formed in Ontario, Canada on or about
November 19, 2012. HBH and Firefly Lane Ltd. each owned a substantial interest

4

in Rypl. On or about August 22, 2017, Firefly Lane Ltd. transferred its interest in Rypl to Firefly Lane Corporation.

21.    Surecom was a corporation formed in Curaçao on or about October 11, 2001. Firefly Lane Ltd. owned a substantial interest in Surecom. Sometime on or before August 17, 2017, Firefly Lane Ltd. transferred its interest in Surecom to Firefly Lane Corporation.

22.    Among other assets, Surecom owned a license over the domain name www.cam4.com ("Cam4.com") and other affiliated websites.

23.    Cam4.com was a website dedicated to the uploading, sharing, and viewing of adult content, including performances live-streamed or posted by independent webcam performers engaging in sexually explicit acts. Users of Cam4.com could purchase virtual "tokens" used to tip and buy gifts for webcam performers or for a quid pro quo exchange to access a private show with webcam performers and request specific acts or behaviors.

24.    Granity was a Limited Company formed in Ireland on or about April 3, 2013. Granity was reorganized as an Irish Designated Activity Company on or about May 28, 2016.

25.    On or about April 1, 2013, Surecom entered into a Software and Business License Agreement that allowed Granity to use intellectual property owned by Surecom, including "certain computer software programs," "trade secrets," and Surecom's "web cam business model." In exchange, Granity agreed to pay

5

Surecom "10% of all net amount billed using the Surecom Corporation NV Cam4.com software."

26.     On or about April 3, 2013, Surecom entered a Domain Name License Agreement that allowed Granity to use Cam4.com for the purpose of streaming live and recorded web cameras and other videos, providing online chat rooms, and creating "social networks of web cam viewers and web cam performers."

27.     Cam4.com generated revenue for Granity and Surecom through web sales (e.g., collecting customers' payments in exchange for tokens), subscription fees, and other sources. This revenue was distributed to and through ERICKSON's Foreign Companies and other related entities.

/ /

/ /

/ /

6

28.    The chart below illustrates the claimed relationship between

ERICKSON, HBH, and ERICKSON's Foreign Companies:



### ERICKSON's Tax Returns and Repatriation of Income

29.    From at least January 2014 through at least October 2019,

ERICKSON engaged in a scheme to conceal from the IRS his repatriation of

7

millions of dollars in income generated by and from ERICKSON's Foreign Companies.

30.     As part of this scheme, ERICKSON directed and caused subordinates working for Firefly Lane Corporation, Firefly Lane Ltd., Granity, and Rypl ("his subordinates") to transfer funds from foreign financial accounts held by ERICKSON's Foreign Companies to, among others, HBH's U.S. Bank Account. ERICKSON further directed his subordinates to falsely code those transactions as "loans" for accounting purposes. ERICKSON then used HBH's U.S. Bank Account to pay for personal expenses and caused HBH to wire funds to bank accounts at U.S. financial institutions that he opened in his own name, including an account ending in 0328 ("ERICKSON's U.S. Bank Account").

31.     ERICKSON filed and caused to be filed Forms 1040 and Forms 1120-S on behalf of himself and HBH, respectively, for tax years 2014 through 2018. ERICKSON hired several individuals to prepare, assist in the preparation of, and file these returns.

32.     Bookkeeper 1 was a bookkeeper hired by ERICKSON to prepare and maintain HBH's accounting records, including for years 2014 through 2018.

33.     Accountant 1 was a CPA and tax return preparer retained by ERICKSON to prepare his Forms 1040 and HBH's Forms 1120-S for multiple years, including years 2014, 2015, and 2016. Accountant 1 also prepared ERICKSON's Forms 1040-X for years 2014 and 2015.

8

34.     Accountant 2 was a CPA and tax return preparer retained by
ERICKSON to prepare his Forms 1040 and HBH's Forms 1120-S for multiple years,
including years 2017 and 2018.

35.     For tax years 2014 through 2018, Bookkeeper 1, Accountant 1, and
Accountant 2 prepared financial records and tax returns based on information
provided, and caused to be provided, by ERICKSON, which they relied upon as
being true, accurate, and complete.

36.     In or around September 2018, ERICKSON hired Accountant 3, an
international tax consultant and CPA, to provide advice on the structure and tax
reporting obligations of HBH and its foreign holdings. Accountant 3 also based his
advice and recommendations on information provided, and caused to be provided,
by ERICKSON, which he relied upon as being true, accurate, and complete.

37.     On or about the dates listed below, ERICKSON prepared, signed, and
filed, and caused to be prepared, signed, and filed, Forms 1040 and Forms 1040-X
with the IRS for tax years 2014 through 2018:

| Tax Year | Type of Return | Date Signed |
|----------|----------------|-------------|
| 2014 | Form 1040 | July 1, 2015 |
|      | Form 1040-X | October 7, 2017 |
| 2015 | Form 1040 | June 22, 2016 |
|      | Form 1040-X | October 7, 2017 |
| 2016 | Form 1040 | October 9, 2017 |
| 2017 | Form 1040 | April 3, 2019 |
| 2018 | Form 1040 | October 10, 2019 |

38.     On or about the dates listed below, ERICKSON prepared, signed, and
filed, and caused to be prepared, signed, and filed, Forms 1120-S on behalf of HBH

falsely reporting that HBH owed millions of dollars to ERICKSON's Foreign Companies for tax years 2014 through 2018. Those Forms 1120-S also falsely reported that ERICKSON, in turn, owed millions of dollars to HBH, as follows:

| Tax Year | Date Signed | Debt HBH Purportedly Owed Foreign Companies | Debt Erickson Purportedly Owed HBH |
|----------|-------------|---------------------------------------------|-------------------------------------|
| 2014 | October 14, 2015 | $1,596,150 | $1,493,902 |
| 2015 | March 2, 2016 | $2,356,644 | $2,398,302 |
| 2016 | October 10, 2017 | $3,276,337 | $3,433,265 |
| 2017 | March 29, 2019 | $4,016,854 | $4,542,824 |
| 2018 | September 16, 2019 | $4,969,580 | $5,746,491 |

### Failure to Report "Loans" to Financial Institutions

39.     From in or around 2017 through 2019, ERICKSON submitted various credit applications to financial institutions to borrow money for major purchases, including a personal residence and luxury vehicle. Despite reporting millions of dollars in purported loans to HBH and ERICKSON's Foreign Companies on his and HBH's federal income tax returns, ERICKSON did not disclose owing any such debts on these credit applications.

### Home Purchase and Refinance

40.     On or about November 1, 2017, ERICKSON purchased a personal residence in Excelsior, Minnesota for approximately $1,300,000 ("Personal Residence"). ERICKSON partially financed this purchase using a loan he obtained from Bank 1 ("2017 Home Loan").

41.     To qualify for the 2017 Home Loan, ERICKSON submitted a personal financial statement ("PFS") to Bank 1, which he signed and dated on or about

10

November 1, 2017. As part of this transaction, ERICKSON was required to report all his personal assets and liabilities. ERICKSON reported holding $10,390,000 in personal assets, including his 100% ownership stake in HBH which ERICKSON valued at $8,000,000. ERICKSON also reported owing $2,175,000 in personal liabilities, including outstanding credit card bills and mortgages on other real estate. ERICKSON did not report any debt owed to HBH and ERICKSON's Foreign Companies on the PFS.

42.    ERICKSON certified that all information he reported in the PFS was "true, correct and complete." He further agreed to notify Bank 1 "immediately and in writing" of any material obligations he incurred after submitting the loan application.

43.    On or about November 2, 2017, ERICKSON emailed his subordinates at Rypl using the subject line "Loan" and requested $30,000 "to make a wire from [HBH] tomorrow for a deal." Shortly thereafter, Rypl sent $30,000 via wire transfer to HBH's U.S. Bank Account, which ERICKSON then transferred, and caused to be transferred, to ERICKSON's U.S. Bank Account.

44.    On or about November 3, 2017, ERICKSON sent, and caused to be sent, $27,625.26 from ERICKSON's U.S. Bank Account to the title company facilitating the closing of the purchase of the Personal Residence.

45.    Despite agreeing to notify Bank 1 immediately and in writing of any subsequent debts he incurred, ERICKSON never notified Bank 1 that he

purportedly took out a loan from ERICKSON's Foreign Companies to purchase the Personal Residence.

46.     In or about July 2019, ERICKSON refinanced the 2017 Home Loan through Bank 2. In so doing, ERICKSON completed and submitted to Bank 2 several documents, including a Uniform Residential Loan Application as well as other documents titled "Ability to Repay Borrower Attestation" and "MORTGAGE FRAUD IS INVESTIGATED BY THE FBI" (collectively, the "2019 Refinancing Application"). ERICKSON signed and dated the 2019 Refinancing Application on or about July 18, 2019.

47.     As part of the 2019 Refinancing Application, ERICKSON signed multiple certifications, in which ERICKSON swore that he truthfully, accurately, and completely reported all information requested by the Application and acknowledged that his failure to do so could result in criminal penalties, including the following:

> a. "I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts[.]"
>
> b. "All of my/our debts and material financial obligations have been fully disclosed."
>
> c. "I (we) have no other debt obligations that are expected to exist at or around the time of this transaction closing beyond what I (we)

provided on my (our) loan application and what is provided above on
this document."

d. "I (we) further acknowledge and certify that I (we) understand that
knowingly withholding debt obligation information is mortgage fraud,
which is punishable by incarceration in federal prison."

e. "It is illegal for a person to make any false statement regarding
income, assets, debt, or matters of identification, or to willfully
overvalue any land or property, in a loan and credit application for the
purpose of influencing in any way the action of a financial institution."

48.     ERICKSON, having reviewed these warnings, did not report owing any
debt to HBH and ERICKSON's Foreign Companies in his 2019 Refinancing
Application.

<u>Purchase of Tesla Model X</u>

49.     In or about June 2017, ERICKSON purchased a 2017 Tesla Model X
("the Tesla") for approximately $182,048.

50.     To obtain a loan from Bank 3 and purchase the Tesla, ERICKSON
submitted a credit application on or about June 16, 2017 ("Credit Application"). On
the Credit Application, ERICKSON reported that he was self-employed as HBH's
president and that his monthly income was about $41,667. Further, except for his
monthly mortgage payment, ERICKSON did not report having any personal
creditors or loans. ERICKSON signed the Tesla Credit Application certifying that "I

have read and agree to the terms of this application and that the information in it is complete and true."

51.    On the Credit Application, ERICKSON further attested that he was "applying for individual credit in [his] own name and [was] relying on [his] own income or assets and not the income or assets of another person as the basis for repayment of the credit requested."

52.    ERICKSON obtained approximately $25,000 from ERICKSON's Foreign Companies, which he used as a downpayment towards the purchase of the Tesla. To do so, ERICKSON directed a subordinate at Rypl to send him $25,000 in an email dated on or about June 12, 2017, using the subject line "Loan to Halstead." Shortly thereafter, HBH's U.S. Bank Account received a wire transfer from Rypl totaling approximately $25,000.

53.    On June 19, 2017, ERICKSON caused HBH's U.S. Bank Account to make a payment of approximately $26,601.76 towards the purchase of the Tesla.

**Communications with Accountants and Tax Return Preparers**

54.    As early as October 2017 and continuing through March 2019, Accountants 1 and 2 shared with ERICKSON concerns they had regarding the treatment of ERICKSON's purported loans from HBH and ERICKSON's Foreign Companies.

55.    On or about October 4, 2017, at 8:02 PM, while working on the preparation of ERICKSON's and HBH's tax returns, Accountant 1 emailed ERICKSON, stating "Below are items I need to start preparing the returns. The

corporate is already late. [. . .] No interest charged or paid on loans. Please provide

explanation." ERICKSON did not respond or provide further explanation.

56.    On or about October 4, 2017, at 8:49 PM, Accountant 1 emailed

ERICKSON again, stating "Call me about your return."

57.    On or about October 4, 2017, at 9:57 PM, Accountant 1 sent

ERICKSON another email, stating:

> Originally, I thought our treatment of the loans on the books was
> correct. I have looked further into it, and have changed my opinion. I
> think we are required to calculate imputed interest on your shareholder
> loans. I also think we need to amend the 2014 and 2015 returns and
> calculate imputed interest. For the last three years, the imputed interest
> was about 1%. The affect would result be [sic] additional income for 2014
> of about $12,000, 2015 about $20,000 and 2016 about $30,000 on your
> personal return. The other possibility is that these two loans offset and
> should not be on the books. That this represents a personal loan directly
> to you from RYPl ETC [sic].

58.    On or about October 6, 2017, Accountant 1 emailed ERICKSON,

stating:

> I think you have a loan agreement. If you do not have a loan agreement,
> you need to set up with the corporation immediately. The risk with your
> loan is that the IRS comes in and claims it is compensation rather than
> a loan. If this occurred they would tax it to you personally as wage
> income of $3,000,000. You however would have no basis to take the loss
> from the S-Corp. The loan agreement should state that it is a demand
> note. Then it is entitled to a lower interest rate and the charge each year
> would be smaller. I would like a copy of the note for my file.

59.    ERICKSON did not show or provide Accountant 1 the loan agreement

or note requested.

60.    On or about September 21, 2018, ERICKSON engaged Accountant 3 to

provide consulting services on international tax matters.

15

61.     On or about October 10, 2018, Accountant 3 introduced ERICKSON to Accountant 2 who agreed to prepare ERICKSON's tax returns beginning with returns for tax year 2017.

62.     On or about October 10, 2018, ERICKSON emailed Accountant 1, terminating their relationship and notifying Accountant 1 that ERICKSON had engaged "local experts."

63.     On or about March 19, 2019, while working on the preparation of ERICKSON and HBH's tax returns, Accountant 2 emailed ERICKSON, stating "I'm not comfortable with the accounting here, which is normal (the small business world of loans here and there drives me nuts)[.]"

64.     On or about March 20, 2019, ERICKSON responded, "If you can't do it. No problem. I can make other arrangements. And I don't understand what you mean by 'uncomfortable'. I've had advice from many top people for years regarding my structure and behavior and they all sign off."

65.     On or about March 20, 2019, Accountant 2 responded: "No, it's not you or whatever – it's good. It's not real 'discomfort,' I just don't like doing loans for everything, but it's how it is in the entire world." In a follow-up email on or about March 20, 2019, Accountant 2 stated, "[s]ince you've had it analyzed and have been using it for years, I assume it's fine."

66.     On or about March 20, 2019, ERICKSON responded, "I'm not comfortable with this sort of judgment. Period."

## COUNT 1 (26 U.S.C. § 7201)
### *Evasion of Assessment of Taxes for Tax Year 2014*

67.     The allegations set forth in paragraphs 1 through 66 of this Indictment
are re-alleged and incorporated as if set forth fully herein.

68.     From on or about January 1, 2014 through at least on or about August
29, 2019, in the District of Minnesota and elsewhere, DAVID V. ERICKSON
willfully attempted to evade and defeat substantial income tax due and owing by
him and his spouse to the United States of America for tax year 2014 by committing
the following affirmative acts, among others:

    a.  On or about October 15, 2015, preparing and causing to be prepared,
        signing and causing to be signed, and filing and causing to be filed
        with the IRS a false and fraudulent Form 1040 for tax year 2014;

    b.  On or about October 12, 2017, preparing and causing to be prepared,
        signing and causing to be signed, and filing and causing to be filed
        with the IRS a false and fraudulent Form 1040-X for tax year 2014;

    c.  On or about October 15, 2015, preparing and causing to be prepared,
        signing and causing to be signed, and filing and causing to be filed
        with the IRS a false and fraudulent Form 1120-S on behalf of HBH for
        tax year 2014;

    d.  Directing and causing his subordinates to send funds to U.S. bank
        accounts that ERICKSON controlled, including HBH's U.S. Bank
        Account; and further directing and causing his subordinates to falsely

17

categorize and account for the payment of these funds as nontaxable
loans;

e. Providing false and misleading information to Bookkeeper 1,
Accountant 1, Accountant 2, and Accountant 3, knowing that such
false information would be transmitted to the IRS and used to
underreport and further conceal his true income and tax due on his
and HBH's tax filings for tax year 2014; and

f. On or about August 28, 2019, making false statements to an IRS
Special Agent.

## COUNT 2 (26 U.S.C. § 7201)
### *Evasion of Assessment of Taxes for Tax Year 2015*

69.     The allegations set forth in paragraphs 1 through 66 of this Indictment
are re-alleged and incorporated as if set forth fully herein.

70.     From on or about January 1, 2015, through at least on or about August
29, 2019, in the District of Minnesota and elsewhere, DAVID V. ERICKSON
willfully attempted to evade and defeat substantial income tax due and owing by
him and his spouse to the United States of America for tax year 2015 by committing
the following affirmative acts, among others:

a. On or about October 3, 2016, preparing and causing to be prepared,
signing and causing to be signed, and filing and causing to be filed
with the IRS a false and fraudulent Form 1040 for tax year 2015;

b. On or about October 12, 2017, preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the IRS a false and fraudulent Form 1040-X for tax year 2015;

c. On or about August 26, 2016, preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the IRS a false and fraudulent Form 1120-S on behalf of HBH for tax year 2015;

d. Directing and causing his subordinates to send funds to U.S. bank accounts that ERICKSON controlled, including HBH's U.S. Bank Account; and further directing and causing his subordinates to falsely categorize and account for the payment of these funds as nontaxable loans;

e. Providing false and misleading information to Bookkeeper 1, Accountant 1, Accountant 2, and Accountant 3, knowing that such false information would be transmitted to the IRS and used to underreport and further conceal his true income and tax due on his and HBH's tax filings for tax year 2015; and

f. On or about August 28, 2019, making false statements to an IRS Special Agent.

## COUNT 3 (26 U.S.C. § 7201)
### *Evasion of Assessment of Taxes for Tax Year 2016*

71.    The allegations set forth in paragraphs 1 through 66 of this Indictment are re-alleged and incorporated as if set forth fully herein.

72.    From on or about January 1, 2016, through at least on or about August 29, 2019, in the District of Minnesota and elsewhere, DAVID V. ERICKSON willfully attempted to evade and defeat substantial income tax due and owing by him and his spouse to the United States of America for tax year 2016 by committing the following affirmative acts, among others:

a. On or about October 12, 2017, preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the IRS a false and fraudulent Form 1040 for tax year 2016;

b. On or about October 10, 2017, preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the IRS a false and fraudulent Form 1120-S on behalf of HBH for tax year 2016;

c. Directing and causing his subordinates to send funds to U.S. bank accounts that ERICKSON controlled, including HBH's U.S. Bank Account; and further directing and causing his subordinates to falsely categorize and account for the payment of these funds as nontaxable loans;

20

d. Providing false and misleading information to Bookkeeper 1,

Accountant 1, Accountant 2, and Accountant 3, knowing that such

false information would be transmitted to the IRS and used to

underreport and further conceal his true income and tax due on his

and HBH's tax filings for tax year 2016; and

e. On or about August 28, 2019, making false statements to an IRS

Special Agent.

## COUNT 4 (26 U.S.C. § 7201)
### *Evasion of Assessment of Taxes for Tax Year 2017*

73.     The allegations set forth in paragraphs 1 through 66 of this Indictment

are re-alleged and incorporated as if set forth fully herein.

74.     From on or about January 1, 2017, through at least on or about August

29, 2019, in the District of Minnesota and elsewhere, DAVID V. ERICKSON

willfully attempted to evade and defeat substantial income tax due and owing by

him to the United States of America for tax year 2017 by committing the following

affirmative acts, among others:

a. On or about April 3, 2019, preparing and causing to be prepared,

signing and causing to be signed, and filing and causing to be filed

with the IRS a false and fraudulent Form 1040 for tax year 2017;

b. On or about April 8, 2019, preparing and causing to be prepared,

signing and causing to be signed, and filing and causing to be filed

21

with the IRS a false and fraudulent Form 1120-S on behalf of HBH for tax year 2017;

c.  Directing and causing his subordinates to send funds to U.S. bank accounts that ERICKSON controlled, including HBH's U.S. Bank Account; and further directing and causing his subordinates to falsely categorize and account for the payment of these funds as nontaxable loans;

d.  Providing false and misleading information to Bookkeeper 1, Accountant 1, Accountant 2, and Accountant 3, knowing that such false information would be transmitted to the IRS and used to underreport and further conceal his true income and tax due on his and HBH's tax filings for tax year 2017; and

e.  On or about August 28, 2019, making false statements to an IRS Special Agent.

## COUNT 5 (26 U.S.C. § 7201)
### *Evasion of Assessment of Taxes for Tax Year 2018*

75.    The allegations set forth in paragraphs 1 through 66 of this Indictment are re-alleged and incorporated as if set forth fully herein.

76.    From on or about January 1, 2018, through at least on or about October 15, 2019, in the District of Minnesota and elsewhere, DAVID V. ERICKSON willfully attempted to evade and defeat substantial income tax due and

owing by him to the United States of America for tax year 2018 by committing the following affirmative acts, among others:

    a. On or about October 15, 2019, preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the IRS a false and fraudulent Form 1040 for tax year 2018;

    b. On or about September 16, 2019, preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the IRS a false and fraudulent Form 1120-S on behalf of HBH for tax year 2018;

    c. Directing and causing his subordinates to send funds to U.S. bank accounts that ERICKSON controlled, including HBH's U.S. Bank Account; and further directing and causing his subordinates to falsely categorize and account for the payment of these funds as nontaxable loans;

    d. Providing false and misleading information to Bookkeeper 1, Accountant 1, Accountant 2, and Accountant 3, knowing that such false information would be transmitted to the IRS and used to underreport and further conceal his true income and tax due on his and HBH's tax filings for tax year 2018; and

    e. On or about August 28, 2019, making false statements to an IRS Special Agent.

## COUNTS 6 through 9 (26 U.S.C. § 7206(2))
### *Aiding and Assisting in the Preparation of Materially False Individual Income Tax Returns for Tax Years 2015 through 2018*

77.    The allegations set forth in paragraphs 1 through 66 of this Indictment are re-alleged and incorporated as if set forth fully herein.

78.    On or about the dates set forth below, in the District of Minnesota, and elsewhere, DAVID V. ERICKSON willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS of materially false Forms 1040, which were filed on ERICKSON's behalf, for each tax year set forth below. The Forms 1040 were false and fraudulent as to material matters because the tax returns underreported ERICKSON's and HBH's total income. ERICKSON knew that the Forms 1040 listed below materially underreported his and HBH's total income because, among other reasons, ERICKSON directed his subordinates to send funds to U.S. bank accounts that ERICKSON controlled and to falsely categorize the payment of such funds as nontaxable loans, and also provided false and misleading information regarding the nature of those payments to his accountants, bookkeepers, and tax return preparers.

/ /

/ /

/ /

24

| Count | Tax Year | Approximate Filing Date | False Items on Form 1040 |
|-------|----------|-------------------------|--------------------------|
| 6 | 2015 | October 3, 2016 | a. Form 1040, Ln. 17, Schedule E Income: $266,516<br><br>b. Form 1040, Ln. 22, Total Income: $394,357<br><br>c. Schedule E, Ln. 28(j), Nonpassive Income from Schedule K-1: $275,109<br><br>d. Schedule E, Ln. 41, Total Income: $266,516 |
| 7 | 2016 | October 12, 2017 | a. Form 1040, Ln. 17, Schedule E Income: $418,866<br><br>b. Form 1040, Ln. 22, Total Income: $611,389<br><br>c. Schedule E, Ln. 28(j), Nonpassive Income from Schedule K-1: $418,866<br><br>d. Schedule E, Ln. 41, Total Income: $418,866 |
| 8 | 2017 | April 3, 2019 | a. Form 1040, Ln. 17, Schedule E Income: $328,066<br><br>b. Form 1040, Ln. 22, Total Income: $569,397<br><br>c. Schedule E, Ln. 28(j), Nonpassive Income from Schedule K-1: $328,066<br><br>d. Schedule E, Ln. 41, Total Income: $328.066 |
| 9 | 2018 | October 15, 2019 | a. Form 1040, Ln. 10, Taxable Income: $751,141<br><br>b. Schedule 1, Ln. 17, Schedule E Income: $603,590<br><br>c. Schedule E, Ln. 28(j), Nonpassive Income from Schedule K-1: $275,109<br><br>d. Schedule E, Ln. 41, Total Income: $266,516 |

**COUNTS 10 through 11 (26 U.S.C. § 7206(2))**
*Aiding and Assisting in the Preparation of Materially False Amended Individual Income Tax Returns for Tax Years 2014 through 2015*

79.    The allegations set forth in paragraphs 1 through 66 of this Indictment are re-alleged and incorporated as if set forth fully herein.

80.   On or about the dates set forth below, in the District of Minnesota, and elsewhere, DAVID V. ERICKSON willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS of materially false Forms 1040-X, which were filed on ERICKSON's behalf, for each tax year set forth below. The Forms 1040-X were false and fraudulent as to a material matter because the tax returns underreported ERICKSON's and HBH's total income. ERICKSON knew that the Forms 1040-X listed below materially underreported his and HBH's total income because, among other reasons, ERICKSON directed his subordinates to send funds to U.S. bank accounts that ERICKSON controlled and to falsely categorize the payment of such funds as nontaxable loans.

| Count | Tax Year | Approximate Filing Date | False Items on Form 1040-X |
|-------|----------|-------------------------|----------------------------|
| 10 | 2014 | October 12, 2017 | a. Form 1040-X, Ln. 1, Adjusted Gross Income: $581,231<br><br>b. Schedule E, Ln. 28(j), Nonpassive income from Schedule K-1: $503,030<br><br>c. Schedule E, Ln. 41, Total Income: $445,709 |
| 11 | 2015 | October 12, 2017 | a. Form 1040-X, Ln. 1, Adjusted Gross Income: $413,691<br><br>b. Schedule E, Ln. 28(j), Nonpassive income from Schedule K-1: $275,109<br><br>c. Schedule E, Ln. 41, Total Income: $266,516 |

**COUNT 12 through 15 (26 U.S.C. § 7206(2))**
*Aiding and Assisting in the Preparation of Materially False S Corporation*
*Income Tax Returns for Tax Years 2015 through 2018*

81.    The allegations set forth in paragraphs 1 through 66 of this Indictment are re-alleged and incorporated as if set forth fully herein.

82.    On or about the dates set forth below, in the District of Minnesota, and elsewhere, DAVID V. ERICKSON willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS of materially false Forms 1120-S on behalf of HBH for each tax year set forth below. The Forms 1120-S were false and fraudulent as to a material matter because the tax returns falsely categorized certain funds received by HBH as nontaxable loans and thereby underreported HBH's true pass-through income, whereas, as ERICKSON knew, HBH should have reported the receipt of such funds as income.

| Count | Tax Year | Approximate Filing Date | False Item on Form 1120-S |
|-------|----------|-------------------------|---------------------------|
| 12 | 2015 | August 26, 2016 | a. Form 1120-S, Ln. 21, Ordinary Business Income: $275,109<br><br>b. Schedule L, Ln. 7, Loans to Shareholders: $2,398,302<br><br>c. Schedule L, Ln. 18, Other Current Liabilities: $2,370,775<br><br>d. Schedule K-1, Ln. 1, Ordinary Business Income: $275,109 |
| 13 | 2016 | October 10, 2017 | a. Form 1120-S, Ln. 21, Ordinary Business Income: $418,666<br><br>b. Schedule L, Ln. 7, Loans to Shareholders: $3,433,265 |

| | | | |
|---|---|---|---|
| | | | c.  Schedule L, Ln. 18, Other Current Liabilities: $3,309,781 |
| | | | d.  Schedule K-1, Ln. 1, Ordinary Business Income: $418,666 |
| 14 | 2017 | April 8, 2019 | a.  Form 1120-S, Ln. 21, Ordinary Business Income: $328,066 |
| | | | b.  Schedule L, Ln. 7, Loans to Shareholders: $4,542,824 |
| | | | c.  Schedule L, Ln. 18, Other Current Liabilities: $4,018,078 |
| | | | d.  Schedule K-1, Ln. 1, Ordinary Business Income: $328,066 |
| 15 | 2018 | September 16, 2019 | a.  Form 1120-S, Ln. 21, Ordinary Business Income: $603,590 |
| | | | b.  Schedule L, Ln. 7, Loans to Shareholders: $5,746,491 |
| | | | c.  Schedule L, Ln. 18, Other Current Liabilities: $4,969,790 |
| | | | d.  Schedule K-1, Line 1, Ordinary Business Income: $603,590 |

### COUNT 16 (18 U.S.C. § 1001)
### *Making False Statement*

83.    The allegations set forth in paragraphs 1 through 66 of this Indictment

are re-alleged and incorporated as if set forth fully herein.

84.    On or about August 28, 2019, in the District of Minnesota, DAVID V.

ERICKSON did willfully and knowingly make and cause to be made a materially

false, fictitious, and fraudulent statements and representations in a matter within

the jurisdiction of the executive, legislative, or judicial branch of the Government of

the United States by falsely stating to an IRS Criminal Investigation Special Agent assigned to the investigation of this matter that, first, ERICKSON had never directed someone at Firefly Lane Ltd., Firefly Lane Corporation, and Rypl where to transfer funds on behalf of these companies and, second, by stating that he had no discretion to direct Firefly Lane Ltd., Firefly Lane Corporation, or Rypl to loan funds to HBH. These statements and representations were false because, as ERICKSON then and there knew, he had caused and directed several transactions whereby Firefly Lane Ltd., Firefly Lane Corporation, Granity, and Rypl transferred funds to bank accounts held by HBH and controlled by ERICKSON in amounts determined by ERICKSON.

A TRUE BILL:

_____
FOREPERSON

ANDREW M. LUGER
United States Attorney

_____
BORIS BOURGET
Trial Attorney
U.S. Department of Justice, Tax Division

_____
AMANDA R. SCOTT
Trial Attorney
U.S. Department of Justice, Tax Division