UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-7 (JMB/DLM)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **GOVERNMENT'S BRIEF IN SUPPORT OF ADMISSIBILITY OF EXHIBITS G-635, G-649 TO G-662, G-665 TO G-668, AND G-670 TO G-671 PURSUANT TO 18 U.S.C. § 3505** |
| v. | |
| DAVID V. ERICKSON, | |
| Defendant. | |

The United States of America, by and through U.S. Department of Justice Tax Division Trial Attorneys Amanda R. Scott and Boris Bourget, respectfully submits this brief to aid the Court in determining the admissibility of certain foreign business records, pursuant to 18 U.S.C. § 3505. In short, the Government seeks to admit twenty-one business records obtained pursuant to the execution of a Mutual Legal Assistance Treaty ("MLAT") directed to United International Trust Company N.V. ("UIT") in Curacao. These records consist primarily of incorporation records, financial statements, and foreign bank account applications relating to three entities named in the Indictment: Firefly Lane Ltd., Firefly Lane Corporation N.V., and Surecom Corporation N.V. (collectively, the "Firefly & Surecom UIT Records"). Specifically, these exhibits span G-635, G-649 to G-662, G-665 to G-668, and G-670 to G-671.[1]

---

[1] In the interest of judicial economy and to narrow the remaining disputes, the Government will withdraw G-646 to G-648, which are also disputed foreign business records from UIT, from its Exhibit List.

1

The defendant, David V. Erickson ("Erickson"), maintains that there are reasons to question the reliability of the Firefly & Surecom UIT Records. But all of the foreign business records are accompanied by the appropriate Section 3505 certifications, and Erickson has failed to meet his burden of proffering evidence showing that these records are untrustworthy. Moreover, Erickson has been on notice for more than one year that the Government intends to offer the Firefly & Surecom UIT Records into evidence at trial as foreign records of regularly conducted activity, pursuant to 18 U.S.C. § 3505. Now, on the eve of trial, Erickson objects to the Government's introduction of these records—despite stipulating to the admissibility of similar records obtained via MLAT from UIT relating to Bannister Corporation N.V. ("Bannister"), also named in the Indictment.

For the reasons set forth below, the Government argues that none of the grounds proffered by Erickson warrant exclusion of these records, and the Court should allow admission of the Firefly & Surecom UIT Records at trial as foreign records of regularly conducted activity, pursuant to 18 U.S.C. § 3505. Alternatively, if the Court agrees that Erickson has met his burden to show the untrustworthiness of two disputed exhibits, as cited in his email to the Court dated July 31, 2025, objecting to all the exhibits at issue here, the Government requests that the Court exclude only those records it deems bear sufficient indicia of untrustworthiness, but admit the others under 18 U.S.C. § 3505, without the need to call document custodians.

I.     **Factual Background**

This Brief pertains to twenty-one records relating to the ownership and financial condition of Firefly Lane and Surecom. These records are relevant to establishing Erickson's source of unreported income, his control over and relationship to key entities, and inconsistencies between how key "loan" transactions were coded in Erickson's financial records, as the so-called borrower, and foreign financial records, as the so-called lender.

The Government produced these records to Erickson in discover on May 1, 2024. (*See* Ex. A.) The Gov't notified defense counsel of its intent to introduce these records under 18 U.S.C. § 3505, or alternatively Federal Rule of Evidence 807, by letter dated February 11, 2025. (*See* Ex. B.) This letter identified with particularity the certified foreign records that the Government intends to introduce at trial by responding country and Bates stamp, directing defense counsel to the corresponding foreign records certifications.

On May 8, 2025, the Court issued its Trial Notice and Pretrial Order, directing the parties to file any trial brief by July 14, 2025, and any responses to the opposing party's trial briefs by July 21, 2025. (Doc. 131.) The Government timely filed its Trial Brief, notifying the Court that it intended to introduce various certified foreign business records at trial obtained via MLAT and relating to the Foreign Companies named in the Indictment under 18 U.S.C. § 3505. (Doc. 158 at 29–30.) Erickson also timely filed his Response to the Government's Trial Brief (Doc. 166.) He raised no objections to the authentication or admissibility of

3

any foreign business records in this Response. The Government first learned of Erickson's "reservations" to these exhibits via email dated July 28, 2025. (Ex. C.)

Approximately two weeks before trial and after the Court's deadlines for filing motions in limine, on July 31, 2025, Erickson raised his objections to the Firefly Lane & Surecom UIT records with the Court via email. (*See* Ex. D.) In support, he explained that some proposed exhibits were dated about six months earlier than the date of the certification—namely, December 2023. (*See id.*) He also noted that the managing director of UIT, Gregory Elias ("Elias"), agreed to a voluntary interview with the Government in January 2023 and, during that interview, was served with a subpoena to testify before the Grand Jury. Elias, a citizen and resident of Curacao, informed the Government that he would not be traveling to the Grand Jury, and he, in fact, did not appear.

## II.  Legal Standard

Section 3505 allows the admission of foreign records of regularly conducted activity if supported by a signed certification meeting "specifically delineated standards." *United States v. Ross*, 33 F.3d 1507, 1515 (11th Cir. 1994). In fashioning Section 3505, "Congress designed the hearsay portion of section 3505 to track closely the business records exception to hearsay contained in Federal Rule of Evidence 803(6)." *Id.*; *see also* H.R.REP. No. 907, 98th Cong., 2d Sess. 3, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3578, 3581 (Subsection 3505(a)(1) "should be interpreted in the same manner as the comparable language in Rule 803(6) is interpreted."). In doing so, Congress intended to create "a simple, inexpensive

4

substitute for the cumbersome and expensive procedures" formerly required for the admission of foreign records of regularly conducted activity. *Id.* at 3182, 3580. In short, Congress intended that, in lieu of live witnesses, Section 3505 be utilized to introduce foreign business records, when they are accompanied by a valid certification.

The Government submits that Congress enacted Section 3505 for situations such as the instant matter where a party provides written notice that it intends to offer a foreign record of regularly conducted activity, i.e., a business record, in order to avoid the unnecessary time and expense of international travel to secure testimony simply intended to authenticate documents. The statute provides that "[i]n a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, is *not excludable as evidence by the hearsay rule* where a foreign certification [complies with the rules for authenticating business records]." 18 U.S.C. § 3505 (a)(1) (emphasis added.)

Once the Government establishes a *prima facie* case for trustworthiness by proffering a legally sufficient certification, the burden shifts to the defendant, as the opponent of admission, to prove untrustworthiness. *See, e.g.*, *Shelton v. Cons. Prod. Safety Comm'n*, 277 F.3d 998, 1010 (8th Cir. 2002) (identical language in pre–2011 version of Rule 803(6) places the "burden of proving inadmissibility" on the opponent once requirements of rule are met). "The trustworthiness of the foreign certification depends essentially on the deterrent force of the criminal law of the foreign country." *United States v. Hing Shair Chan*, 680 F. Supp. 521, 523

5

(E.D.N.Y. 1988). To this point, the Court may take judicial notice of matters of foreign law. Fed. R. Crim. P. 26.1; *see, e.g.*, *Hing Shair Chan*, 680 F. Supp. at 523.

The reliability of business records—and the reason they are excluded from hearsay—"is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." Fed. R. Evid. 803(6), Advisory Committee's Note. Tracing the business records exception back to its origins, Wigmore emphasized the importance of the requirement that the record in question be made as part of a "habit and system of making such a record with regularity." 5 John Henry Wigmore, Evidence in Trials at Common Law § 1522, at 442 (Chadbourn rev.1974). He explained that the entry must be "part of a series of entries or reports, not a casual or isolated one. . . . [A] memorandum casually made, would not answer this requirement." *Id.* § 1525, at 446. The Supreme Court in *Palmer v. Hoffman*, 318 U.S. 109, 113–14 (1943), held that the analysis should focus on whether the entries were "made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls" for the business, such as "payrolls, accounts receivable, accounts payable, bills of lading and the like." *Id.*

Finally, in making its preliminary determination on the business records, the Court need only find the facts supporting admissibility by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The

6

preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."). Once a foundation for the admission of records is laid, absent specific and credible evidence of untrustworthiness, "the proper approach is to admit the evidence and permit the jury to determine the weight to be given to the records." *United States v. Hillis*, 656 F. App'x. 222, 228 (6th Cir. 2016) (citations omitted).

### III.  Argument

#### A.  The Firefly & Surecom UIT Records Are Admissible

The Section 3505 certification for all the Firefly & Surecom UIT Records plainly satisfy the requirements of the rule, and Erickson does not argue otherwise. The certification shows that Priscilla Bueno, Compliance Manager of UIT, declared—"with the understanding that I am subject to criminal penalty under the laws of Curacao for an intentionally false declaration"—that the Firefly & Surecom UIT records were (1) made at or near the time of the occurrence of the matters set forth therein *or* from information transmitted by a knowledgeable person, (2) kept in the course of regularly conducted business activity, (3) made by such business activity as a regular practice, and (4) were originals or duplicates of original records. (G-635.)

Erickson nonetheless argues that the Government should be required to produce a custodian witness to admit the documents trial. In advancing this

7

argument, Erickson cites only *two* of the twenty-one records at issue to argue that there are indications that *all* the Firefly & Surecom UIT Records are not reliable. Specifically, he asserts that because G-655 and G-656 (i.e., annual financial summaries for Firefly Lane for the years 2017 and 2018) are signed in May 2023 "with no indication when the documents were actually created," then it follows that that there is insufficient evidence that *any* of the Firefly & Surecom UIT Records are what they claim to be: "contemporaneous accurate records of transactions that occurred within the period of the charged conduct." (Ex. D.)

Yet, this argument fails to address the fact that Section 3505 encompasses not only certified foreign records that were made "at or near the time of the occurrence of the matters set forth," but also records that were made "from information transmitted by a person with knowledge of those matters." 18 U.S.C. § 3505(a)(1)(A). Erickson cites no authority standing for the proposition that foreign business records may only be admissible under 18 U.S.C. § 3505 if the certification is dated within a specific period of time. The plain language of Section 3505 provides that foreign business records "shall not be excluded as evidence by the hearsay rule" if the certification complies with 18 U.S.C. § 3505(a)(1)(A)–(D). The Certification of Authenticity of Business Records provided by UIT properly tracks the statutory language contained in § 3505(a)(1)(A)–(D) and Federal Rule of Evidence 803(6).

Erickson's argument does not give rise to credible evidence of untrustworthiness. According to its website, UIT is a Curacao-based trust

8

company founded in 2006 that advertises serving 3,000 clients, and it is licensed and regulated by the Central Bank of Curaçao and St. Maarten to provide trust services. Moreover, the certification was signed by a qualified person, and the Court should give considerable weight to the trustworthiness of the foreign certification because the laws of Curacao make perjury a crime. *See Hing Shair Chan*, 680 F. Supp. at 523. In support, the Government respectfully requests that the Court take judicial notice of Curacao Penal Code Articles 207, 207a, and 207b, attached as Exhibit E.

The reliability of the Firefly Lane & Surecom UIT records is corroborated by the fact that Erickson stipulates to the admissibility of nineteen records also produced by UIT via MLAT pertaining to Bannister. Those stipulated records contain substantially the same types of records as the Firefly & Surecom UIT records, including articles of incorporation, annual reports, foreign bank records, and stock registers. (*See* Doc. 190, Exs. 672–690.) Those records also predominately concern the years 2014 to 2018. Many are dated in August 2017. Erickson fails to explain the discrepancy in his treatment of the Bannister UIT documents versus the Firefly & Surecom UIT records. Indeed, the very fact that he agrees to the admissibility of some records demonstrates that there is nothing inherently unreliable about records certified in 2023 that substantively concern prior years.

Fundamentally, Erickson's argument is no different than claiming that a bank statement regularly produced in the course of a bank's business activities is

9

untrustworthy because the proponent of the statement does have actual receipts for the underlying purchases reflected in that statement. Moreover, though he suggests that Elias had some motive to alter UIT's records to "curry favor" with the Government having received a subpoena through process separate from MLAT proceedings, he offers no evidence that such a thing happened. In fact, the records he seems to suggest were backdated or altered—namely, the Firefly Lane Annual Reports for 2017 and 2018 (G-655 & G-656)—in fact, are more beneficial to the defense case than the Government case. As shown in G-783, prepared by IRS Revenue Agent Hewell, Firefly Lane reported outstanding liabilities from Halstead Bay Holdings Inc. and Bannister for the first time in 2017. In any event, "[t]he motive behind the preparation of a business record is not generally a ground for excluding a record." *In re WorldCom, Inc. Securities Litigation*, 2005 WL 375313 at *8 (S.D.N.Y. Feb. 17, 2005) (quoting Advisory Committee Notes explaining that, the "absence of a motivation to misrepresent has not traditionally been a requirement of the rule").

  Moreover, Erickson's argument fails because it conflates the Rule 803(6) elements (which a proponent of business records must satisfy) with absolute accuracy of the documents (which a proponent need not). Records made "at or near the time of the event, by a person with knowledge, and kept in the regular course of business," are considered non-hearsay because they can be relied upon to reflect what was conveyed to the author of the record at the time it was made, and maintained by the entity as part of its practices. If someone—like the defendant

10

in this case—intends to conceal his liabilities or receipt of payments from a foreign company managed by an international trust company, the record-keeping processes of the trust company will necessarily record that false information. Therefore, even though the information conveyed is not true, the record-gathering and maintenance processes ensure that the documents reliably record the information as it was given. In other words, they are reliable in their routine recording of information, whether it is accurate or not. Accordingly, "Rule 803(6) does not require testimony [or certification] that the record is accurate." *United States v. Towns*, 718 F.3d at 409 (quoting *Wilson v. Zapata Off–Shore Co.,* 939 F.2d 260 (5th Cir.1991)). Rather, it is "enough" that the sworn statement of the custodian contained language that "track[ed] the language of Rule 803(6) nearly word for word." *Id*.

In sum, neither the rules of evidence nor common sense should allow Erickson to hide the true nature of certain repatriated funds income and assets through the use of false and fraudulent documents, and then cry foul when those same documents are used against him to prove his criminal behavior. The UIT records at issue here are indisputably records of a regularly conducted activity, which were made at or near the time of the events by individuals whose job duties entailed making those records. Contrary to the Defendant's claim, there is no requirement of absolute accuracy for business records to be admitted. *See, e.g.*, *United States v. Khatallah*, 278 F. Supp. 3d 1, 7–8 (D.D.C. 2017) (admitting certified foreign business records per 18 U.S.C. § 3505 despite certain

discrepancies that could have innocent explanation, plus no proffered evidence of manipulation after receipt by the opponent); *United States v. Miller*, 2018 WL 4961458, at *4 (E.D.N.Y. Oct. 15, 2018) (mismatch between content and summary not sufficient to show unreliable).

Instead, "[w]hat is more important—and actually required—is the testimony of the custodian [or a certification] ensur[ing] such records are free from adulteration after the fact." *United States v. Towns*, 718 F.3d at 410 (5th Cir. 2013); s*ee also United States v. Jones*, 554 F.2d 251, 252 (5th Cir. 1977) (proper foundation for business records established through recitations of "facts contained in FRE 803(6)"). Accordingly, the Erickson's challenge to the admission of those records pursuant to Section 3505 fails. So, too, does his argument that live witnesses must authenticate the relevant UIT records.

B. <u>Erickson Did Not Timely Oppose Admission, and Such Failure Should Constitute Waiver</u>

Under 18 U.S.C. § 3505(b), "[f]ailure by a party to file such *motion* before trial shall constitute a waiver of objection" of the noticed foreign business records. Here, the Government first disclosed these records to the defense in May 2024, and first noticed its intent to use these records six months ago in February 2025. Erickson did not object until July 28, 2025, and did not raise the issue with the Court until July 31, 2025, and he did so then not via motion, but an informal email.

As Erickson elsewhere has stated, "[t]his trial effectively begins the day the Government's requested depositions begin[.]" (Doc. 108 (filed March 28, 2025).) Authorized depositions of certain foreign witnesses were conducted in May 2025. Had Erickson raised an objection to the records at issue here before then, the Government likely would have separately moved under Rule 15 for leave of court to depose a UIT records custodian. *See United States v. Tedder*, 801 F.2d 1437, 1449 (4th Cir. 1986) ("The defendant should have been able to prepare a relatively simple motion challenging the trustworthiness of the bank records between November 26 and December 4, the date on which the trial began. Even if some slight delay would have been excusable, delay of more than one month is not.").

C. <u>The Confrontation Clause Does Not Preclude Admission</u>

Finally, these records should not be excluded under the Confrontation Clause. This is because foreign business record certifications themselves are not considered "testimonial." *See, e.g.*, *United States v. Anekwu*, 695 F.3d 967 (9th Cir. 2012) (holding certificates of authentication for foreign public and business records were not "testimonial" within meaning of Confrontation Clause, and thus district court's admission of such certificates into evidence in wire fraud prosecution was not plain error); *United States v. Hagege*, 437 F.3d 943, 958 (9th Cir. 2006) ("We conclude therefrom that foreign business records admitted under § 3505 are not subject to the *Crawford* requirement of confrontation."); *United States v. Qualls*, 613 F. App'x 25 (2d Cir. 2015) (holding admission of testimony pertaining to third-party foreign business records did not violate defendant's

13

rights under Confrontation Clause in his prosecution for wire fraud, mail fraud, conspiracy to commit mail and wire fraud, and obstruction of justice, absent identification by defendant of any out-of-court testimonial statement the government introduced against him at trial).

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court overrule Erickson's objections to G-635, G-649 to G-662, G-665 to G-668, and G-670 to G-671 and admit these records as certified foreign business records under 18 U.S.C. § 3505. Alternatively, if the Court determines that Erickson has met his burden to demonstrate the unreliability of G-655 and G-656 (i.e., Firefly Lane Annual Reports for 2017 and 2018), then the Government respectfully requests that the Court exclude only those records for which he has met his burden.

Dated: August 12, 2025                                 Respectfully Submitted,

JOSEPH H. THOMPSON
Acting United States Attorney

BY:   */s/ Amanda R. Scott*
AMANDA R. SCOTT
Wisconsin State Bar No. 1115668

BORIS BOURGET
Maryland State Bar. No. 2109080015

Trial Attorneys
Department of Justice, Tax Division
150 M Street NE
Washington, DC 20002
(202) 718-2056 (Scott)

(202) 307-2182 (Bourget)

*Attorneys for the United States*